IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **SOUTHERN SCHOOL, LLC and** | § | |
| | § | Case No. 11-80573 |
| **3TXG, LP** | § | |
| | § | Joint Administration Requested |
| Debtors | § | |

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF
KAMLESH HASMUKH, MANAGING MEMBER OF SOUTHERN SCHOOL, LLC,
THE GENERAL PARTNER OF 3TXG, LP IN SUPPORT OF FIRST DAY MOTIONS**

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF GALVESTON | § |

1. I, Kamlesh Hasmukh, am a managing member of Southern School LLC ("Southern") which is the general partner of 3TXG, LP ("3TXG") and owns and operates The Goddard School (the "School) located a 1650 Friendswood Lakes, Friendswood, Texas. I am familiar with Southern's, 3TXG's, and the School's financial situations. In my capacity as Southern's managing member; I am familiar with the day-to-day-operations, business affairs, and books and records of the School.

2. To minimize the immediate adverse effects on Southern and 3TXG as Debtors filing for Chapter 11 protection and to enhance prospects of a successful reorganization, Debtors are filing a number of motions requesting various types of "first day" relief (collectively, the "First Day Motions"). I am familiar with the contents of each First Day Motion (including the exhibits and other attachments thereto), and I believe that the relief sought in each First Day Motion: (i) is necessary to enable Debtors to operate in Chapter 11 with minimum disruption or

loss of productivity or value; (ii) is critical to Debtors' achievement of a successful reorganization; and (iii) best serves Debtors' estates and the interests of their creditors.

3. I submit this affidavit (the "Affidavit") in support of the First Day Motions. Except as otherwise indicated, all statements set forth in this affidavit are based upon: (i) my personal knowledge, (ii) documents and other information prepared or collected by other members of my employ, (iii) my review of relevant documents, and/or (iv) my opinion based upon my experience and knowledge of Southern's and 3TXG's business operations and financial conditions. If I were called upon to testify, I could and would testify competently to the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I authorized Ronald J. Smeberg to submit this Affidavit on behalf of myself as the managing member of Southern, which is also the general partner for 3TXG.

4. Part I of this Unsworn Declaration describes both Southern's and 3TXG's financial situations, and their business, capital structures, and the circumstances surrounding the commencement of this Chapter 11 case.

5. Part II sets forth the relevant facts in support of each First Day Motion.

## Part I
## OVERVIEW OF THE DEBTORS'BUSINESS OPERATIONS

**A. Summary of Reasons for Filing**

6. Debtors commenced their cases because they are no longer able to fully service their secured and unsecured debt due to the 2008-2010 economic downturns across the United States. Debtors continue to operate the School as Debtors-in-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the U.S. Trustee.

**B. Description of the Debtors**

7.  3TXG, LP was formed in February 2006 by my spouse, Nershana Hasmukh, and I in order to buy land for and ultimately build the School. At the same time, my spouse and I formed Southern to serve as General Partner for 3TXG. Throughout the existence of Southern and 3TXG, there have been no other members or partners..

**C. Background**

8.  In 2007 3TXG purchased the land located at 1650 Friendswood Lakes, Friendswood, Texas. Subsequently, Southern built the premises for the School on the Friendswood land during 2007. The School opened and began enrolling students in July 2008.

9.  Southern constructed the School in 2007, by way of a mortgage from CIT Small Business Lending Corp. ("CIT") in the amount of $2 million (the "Note"). The School was unable to operate successfully due to its opening during one of the severest economic downturns the United States has seen. Initially, CIT worked with the Debtors in allowing interest only payments to be made while awaiting enrollment increases, however, in August 2011 CIT demanded the Note be caught up with a lump sum payment of more than $81,000, which resulted in Debtors filing their Chapter 11 cases.

**D. Description of Debtors' Business**

10. The School was built in 2007, it has 9 classrooms and houses a maximum of 162 students. The School currently has a total of eighteen (18) teachers employed and one (1) school director. Currently the School tends to 45 full time students with 29 part-time students for a total of 74 students, but the number of students is expected to increase shortly, which may require Debtors to hire two (2) new teachers.

11. The School's payroll is approximately $24,000 per month, which includes the 18 teachers and the school director. However, this does not include the annual salary for myself, of which nothing has been drawn this year.

**E. Debtors' Liabilities**

12. Southern's and 3TXG's estimated secured credit as of the Petition Date is as follows:

**CIT Small Business Lending Corp. ("CIT")**
Total Prepetition Secured Mortgage $1,957,629.72

**CIT Small Business Lending Corp. ("CIT")**
Second Secured Mortgage of Approximately $20,000

**Galveston County Tax Assessor Collector ("GCTAC")**
Total Prepetition Taxes Owed $38,000

**Reliance Tax Loans ("Reliance")**
Total Prepetition Statutory Tax Lien of approximately $21,000

**F. The Debtors' Relationship with their Secured Creditors**

13. CIT has a secured interest in all of the Southern's property, equipment, inventory and rents. CIT also has a secured interest in 3TXG, LP's real property. GCTAC and Reliance both have statutory property tax liens.

**G. Potential Unsecured creditors are as follows:**

| | |
|---|---|
| CIT/QDSontheweb | $213.55 |
| Goddard Systems, Inc. /Brooks Advertising | $58,000.00 |
| Goddard Systems, Inc. | $5541.00 |
| Hasmukh Bhakta | $30,000.00 |
| Kamla Hasmukhbhai | $55,000.00 |
| M&T Bank | $4,469.09 |
| Ravindra Bhagat | $30,000.00 |
| US Bank ADA Business Resources | $20,941.95 |
| US Bank LinuxFund.org | $20,515.83 |
| Nershana Hasmukh | $55,000.00 |
| AT&T Universal | $4900.00 |
| Centerpoint Energy | Unknown |

4

| | |
|---|---|
| Champion Energy Services | Unknown |
| Comcast | Unknown |
| Harvard Alumni Association | $2600.00 |
| Maintenance of Houston, Inc. | $4300 |

**H.  Unsecured Priority Creditors**

| | |
|---|---|
| IRS | $46,000.00 |
| Texas Comptroller | $5400.00 |

**I.  Events Leading up to the Chapter 11 Filing**

14.     Southern arranged for construction of the School in early 2007 while the economy still appeared to be on the rise.  The unexpected economic downturn beginning in mid-2008 led to a significant decrease in student enrollments, causing the School's revenues to be lower than anticipated.

15.     The School's current revenue stream does not allow Southern or 3TXG to meet the responsibilities required of both their secured and unsecured creditors.  However, I believe the Debtors can make the School profitable through a reasonable chapter 11 plan that accounts for the School's projected income in the following years.

## PART II

**FIRST DAY MOTIONS**

**A.     Emergency Motion Pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases**

16.     By the Emergency Motion Pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases, Debtors seek an order authorizing their Chapter 11 cases to be jointly administered.  Debtors share the same debt and are owned by the same individuals.  Southern is 3TXG's general partner and operates 3TXG's only property, the Goddard School as Southern's only business operation.  3TXG owns

no other assets other than the Goddard School. The mortgage held by CIT is guaranteed by both entities. No creditors would be prejudiced by jointly administering these cases. Joint administration of these two cases would be time saving and cost effective, which is in the best interests of Debtors to preserve their estates for a successful reorganization.

**B.     Emergency Motion for Order Authorizing Debtors to Use Cash Collateral and Granting Adequate Protection to Pre-petition Lender**

17.     In summary, by the Emergency Motion for Order Authorizing Debtor to Use Cash Collateral, and Granting Adequate Protection to Prepetition Lender (the "Motion"), Debtors seek an Order authorizing them to use cash collateral while they reorganize, so that they may continue operating the School.

18.     As set forth in the Motion, an immediate and critical need exists for Debtors to be permitted access to funds in order to prevent a disorderly termination or disruption of the School's business. Good cause has been shown for the entry of this Order. The cash collateral use is vital to avoid immediate and irreparable harm to Debtors' estates. Absent such use, Debtors' estates will not have funds sufficient to satisfy their outstanding financial obligations and will cause the School to close. Allowing the use of such cash collateral, therefore, is in the best interest of the Debtors estates and will serve to preserve the value of the estates.

19.     I believe that CIT will consent to Debtors use of Cash Collateral in accordance with the terms and provisions of the filed motion (to avoid immediate and irreparable harm to Debtors estates), which is based on the Budget attached to the Motion as Exhibit "A".

20.     Pursuant to the Bankruptcy Code and in light of the foregoing, Debtors are required to agree to provide adequate protection to CIT in respect of Debtors use of its collateral, as is contemplated by the Budget attached to the Motion as Exhibit "A".

21. Debtors have an emergency and pressing need for the use of the cash collateral of CIT to be able to pay costs of ongoing operations, to satisfy payroll, to pay utilities, and to pay vendors to ensure a continued supply of services and materials essential to the Debtors and the School's continued viability. Cash collateral will not be used for any capital expenditures. If unable to use the cash collateral, Debtors would be unable to operate their business and maintain the value of the assets.

22. Debtors are asking the Court to Grant them the use of the Cash Collateral and grant CIT replacement liens and reasonable monthly payments as adequate assurance.

C. **Emergency Motion for Order Authorizing Debtors to Continue Certain Customer Practices and Pay Critical Vendors**

23. By the Emergency Motion for Order Authorizing Debtor to Continue Certain Customer Practices and Pay Critical Vendors (the "Customer Practices Motion"), Debtors wish to honor pre-petition customer and credit card responsibilities as well as maintain necessary janitorial services.

24. As a convenience to its customers, the School accepts payments and deposits by credit card (the "Credit Card Service"), which are processed by Heartland Payment Systems ("HPS"), 90 Nassau Street Princeton, NJ 08542. Consequently, Debtors may be required to pay certain fees to HPS, which may have accrued, but remain unpaid, as of the Petition Date. The average monthly fees for the Credit Card Services totals approximately $1200. Maintaining credit card processing is an essential service expected by the Schools' parents.

25. In addition, in the ordinary course of business, and prior to the Petition Date, the School may have received deposits or other prepayments from certain of its customers relating to student tuition for school days occurring after the Petition Date (the "Prepayments"). I estimate

that the total amount of Prepayments as of the Petition Date is approximately $4000.  Certain of the School's customers may also hold contingent claims against it for refunds, discounts, price adjustments and other tuition credit balances (collectively, the "Refunds").  Fulfilling all of these obligations relating to the Prepayments and Refunds are essential to insuring that the school maintains a good reputation in the daycare industry.  Failure to fulfill these obligations could result in negative internet comments or worse bad publicity in the neighborhood, both of which could quickly and irreparably damage the school's image in the community.

26. Finally, the School currently utilizes janitorial services through Maintenance of Houston, Inc. Such services are required to maintain the School's cleanliness and keep the areas sanitary for the Students, which is expected by the School's parents.  Janitorial fees are usually paid on a monthly basis but recently the school required additional services such that the School has some fees accrued, yet unpaid, as of the Petition Date.  These fees are believed to be less than $4300 as of the Petition Date.  These services are essential because parents expect their child's daycare to be impeccable and failure to maintain good janitorial services for even a couple days could prove disastrous.

27. The success and viability of the Debtors' business during this chapter 11 case, and ultimately, the Debtors' ability to maintain and maximize value, is dependent upon the patronage and loyalty of the Debtors' students. In that regard, the Customer Practices and services rendered by the Critical Vendors are critical and any delay in their performance could severely and irreparably impair customer relations.

**D.     Debtors' Motion for Entry of an Order Authorizing the Debtors to Pay Prepetition Employee Obligations, Pay Worker Compensation Insurance Premiums, and Direct All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations and Worker Compensation Premiums**

28.     By the Debtor's Motion for Entry of an Order Authorizing the Debtors to Pay Prepetition Employee Obligations, Pay Worker Compensation Insurance Premiums, and Direct All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations and Worker Compensation Premiums, Debtors are requesting authorization to fund all pre- and post-petition Employee Obligations, Employment Taxes and Insurance

29.     These obligations consist of employment and withholding taxes, employee garnishments and withholdings, and Worker's Compensation Insurance premiums.

30.     The School is required to withhold from Payroll amounts that it is required to remit to various federal, state and local taxing authorities and other governmental agencies (the "Employment and Withholding Taxes").  These Employment and Withholding Taxes include Social Security taxes; federal, state, and local income taxes; wage garnishments; and other court ordered deductions.

31.     These Employment and Withholding Taxes are usually calculated based on statutorily-mandated percentages of earned wages and Debtors seek authority to timely pay the Employment and Withholding Taxes, which will become due and payable for the current pay quarter ending December 31, 2011,  However, the remaining past due payroll taxes shall be paid as part of Debtors' chapter 11 plan.  Additionally, to the extent they exist, Debtors request authority to pay outstanding wage garnishments and other court-ordered deductions which it has withheld from its employees paychecks.

32.     Finally, the School provides workers' compensation benefits to all employees through The Hartford Insurance Company.  It is critical that the School be permitted to continue its current Workers' Compensation Insurance because alternative arrangements for coverage would most certainly be more costly, and the failure to provide coverage may subject the School

to severe penalties. Failure to maintain Workers' Compensation coverage may also result in attempts by employees to compel payment through litigation or similar means, and jeopardize Debtors ability to conduct business. I do not believe that Debtors have any outstanding or unpaid premiums for the Workers' Compensation benefits, but it is important that they be able to continue to pay the post-petition premiums.

E.   **Debtors' emergency Motion for Order (i) Prohibiting Utilities from Altering, Refusing or Discontinuing Services on Account of Prepetition Invoices and (ii) Authorizing and Approving of Procedures for Providing Adequate Assurance of Post-Petition Payments**

33. By the Debtor's Emergency Motion for Order (i) Prohibiting Utilities from Altering, Refusing or Discontinuing Services on Account of Prepetition Invoices and (ii) Authorizing and Approving of Procedures for Providing Adequate Assurance of Post-Petition Payments, Debtors are requesting to be authorized to provide a deposit to their Utility Companies as adequate assurance to prevent disconnection or altering of services.

34. I believe that emergency relief is necessary because uninterrupted utility service is critical to Debtors continued operation of the School and their ability to reorganize. Debtors currently utilize electricity, telephone services, water service, trash maintenance, cable television, and similar services ("Utility Services") through various accounts with various utility companies. These Utility Services are required to service the School's classrooms, on which its revenue depends. I have provided a list of the names and addresses of the Utility Companies and proposed Adequate Deposits attached to the Utility Motion as Exhibit "A".

35. Debtors propose offering $100 each to Utility Service provider as an adequate assurance deposit.

36. Debtors will provide the $100 deposits prior to the expiration of thirty (30) days following the Petition. Debtors have also requested that any Adequate Assurance Deposit they

provide to the Utility Companies be returned to them at the conclusion of the current case. Continuance of the School's current Utility Services is vital for Debtors to have a successful reorganization plan and request the court to authorize me to provide the Adequate Deposit to the utility companies to prevent the disruption or alteration of my utility services.

    I declare under penalty and perjury that the foregoing is true and correct Executed this <u>October 31</u>, 2011.

/s/Kamlesh Hasmukh_____
Kamlesh Hasmukh

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2011, true and correct copies of the foregoing were faxed to creditors on the attached fax list and also will be forwarded by U.S. first class mail on November 1, 2011, postage prepaid, on all parties listed on the attached Service List.

                            */s/ Ronald J. Smeberg*

                                  RONALD J. SMEBERG

# **FAX LIST**

| To: Company | Contact | Fax Number |
|---|---|---|
| City of Friendswood | Roger C. Roecker, City Manager | (281) 482-3722 |
| Champion Energy Services | Commercial Accounts Department | (281) 653-5080 |
| Comcast | Legal Department | (866) 947-5587 |
| CIT Small Business Lending | F. Beth Morgan | morgan@fbethmorgan.com |
| US Bank | Bankruptcy Department | (513) 979-1044 |
| M & T Bank | Legal Department | (716) 842-5376 |
| IESI – Alvin | Commercial Services | (281) 331-1660 |
| CenterPoint Energy, Inc. | Legal Department | (713) 207-0141 |

## SERVICE LIST

**DEBTOR**

Southern School, LLC
1650 Friendswood Lakes Blvd.
Friendswood, TX 77546

3TXG, LP
915 W. Nasa Parkway
Webster, TX 77598

**DEBTORS' COUNSEL**

Ronald J. Smeberg
The Smeberg Law Firm, PLLC
11550 IH 10 West, Suite 180
San Antonio, TX 78230

**GOVERNMENTAL ENTITIES**

U.S. Trustee
Attn: Ellen Hickman
515 Rusk Ave., Suite 3516
Houston, TX 77002
ellen.hickman@usdoj.gov

U.S. Attorney
Attn: Bankruptcy Division
P.O. Box 61129
Houston, TX 77208

Attorney General of U.S.
Department of Justice
Main Justice Building,
Room 511
950 Pennsylvania Ave., NW
Washington, D.C. 20530

Texas Comptroller of
Public Accounts
P.O. Box 149359
Austin, TX 78714-9359

Internal Revenue Services
Special Procedures Branch
300 E. 8th St.
Stop 5026 AUS
Austin, TX 78701

Galveston County Tax Office
Attn: Tax Assessor-Collector
722 Moody Ave.
Galveston, TX 77550

**SECURED CREDITORS**

CIT Small Business Lending Corp.
Attn: F. Beth Morgan
1 CIT Drive
Livingston, NJ 07039
morgan@fbethmorgan.com

**TWENTY LARGEST CREDITORS**

Goddard Systems Inc./Brooks Advertising
1016 West Ninth Avenue
King of Prussia, PA 19406

Goddard Systems Inc.
1016 West Ninth Ave.
King of Prussia, PA 19406

US Bank, NA
LinuxFund.org
Bankruptcy/Recovery Dept
PO Box 5229
Cincinnati, OH 45201

US Bank ADA Business Resources
Bankruptcy/Recovery Dept
800 Nicollet Mall
Minneapolis, MN 55402

M&T Bank
Attn: Legal Department
P. O. Box 64679
Baltimore, MD 21264-4679

Ravindra Bhagat
301 E. Highway 6
Alvin, TX 77511

Hasmukh Bhakta
3430 Butler Ave.
Los Angeles, CA 90066

Kamla Hasmukhbhai
915 W. Nasa Parkway
Webster, TX 77598

Nershana Hasmukh
915 W. NASA Road One
Webster, TX 77598

CIT/QDSontheweb.com
One Deerwood
Attn: F. Beth Morgan
10201 Centurion Pkwy N., Ste. 100
Jacksonville, FL 32256
morgan@fbethmorgan.com

Heartland Payment Systems
Attn: Management
1 Heartland Way
Jeffersonville, IN 47130

City of Friendswood
Attn: City Manager
910 S. Friendswood Drive
Friendswood, TX 77546

Champion Energy Services, LLC
Attn: Commercial Accounts
P.O. Box 4190
Houston, Texas 77210-4190

Comcast
Attn: Business Services
P. O. Box 660618
Dallas, TX 75266

IESI-Alvin
Business Accounts
P. O. Box 1508
Alvin, TX 77512-1508

CenterPoint Energy, Inc.
Attn: Legal Department
P.O. Box 4567
Houston, Texas 77210-4567

Maintenance of Houston, Inc.
4007 Waldo Street
Houston, Texas 77063

AT&T Universal Business
PO Box 6235
Sioux Falls, SD. 57117-6235

Harvard Alumni Association
Card Services
P.O. Box 13337
Philadelphia, PA 19101-3337